**Opinion filed September 30, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00259-CV

_____

## JOE TORRES, Appellant

## V.

## STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 51508**

### M E M O R A N D U M   O P I N I O N

This is an appeal in a *Stowers* action brought against State Farm County Mutual Insurance Company of Texas. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547–48 (Tex. Comm'n App. 1929, holding approved). In the first part of a bifurcated proceeding, the trial court submitted a single issue to the jury asking it to determine if State Farm's insured, Edward Aguilar,[1] intentionally

---

[1] We will refer to State Farm's insured, Edward Aguilar, as "Aguilar" and to his wife, Patricia Aguilar, as "Patricia."

caused injury to the claimant, Joe Torres. The jury answered this question in the affirmative. The trial court entered a "take nothing" judgment against Torres based upon the jury's affirmative finding. Torres challenges the trial court's judgment in two issues on appeal. We affirm.

*Background Facts*

The incident giving rise to this case occurred between 4:00 a.m. and 5:00 a.m. on the morning of July 8, 2012. Following a family birthday party, the family carried the party over to a family member's house and continued to celebrate into the wee hours of the morning. At this point, most of the attendees, including Aguilar, were intoxicated. Around 3:00 a.m., Aguilar and his wife, Patricia, decided to leave the party.

On the way to their vehicle, the couple got into a disagreement over who should drive. This resulted in a physical altercation between the couple. Aguilar slapped Patricia across the face, and Patricia "went back at him." Torres and Jose Pesina heard the argument and intervened, tackling Aguilar to the ground and holding him there. While Torres and Pesina were holding Aguilar on the ground, Patricia continued hitting and kicking Aguilar until she was pulled away from him.

After about ten minutes, Torres and Pesina released Aguilar. Aguilar then walked to the vehicle and drove off. But instead of leaving, Aguilar turned the vehicle around and drove back toward the house, running up over the curb and straight at Patricia. Aguilar struck Patricia, Torres, and David Garza with the vehicle. Aguilar then left the scene.

Soon after the incident, Torres made a claim with State Farm for his injuries. Aguilar's State Farm Auto Policy provides up to $30,000 for "bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident." However, under the policy's exclusions, State Farm does "not

provide Liability Coverage for any person . . . [w]ho intentionally causes bodily injury or property damage."

Approximately four months after submitting his claim to State Farm, Torres made a written demand on State Farm, stating that, if State Farm did not pay the Auto Policy limits, Torres would seek an excess judgment against Aguilar and accept an assignment of Aguilar's rights against State Farm.

In July 2013, Torres and Patricia filed suit against Aguilar for their injuries from the accident. They alleged that their injuries from the accident were caused by Aguilar's negligence. Torres and Patricia were represented by the same attorneys in the negligence lawsuit.

During the pendency of the negligence action, State Farm filed a declaratory judgment action against Aguilar. State Farm alleged that it had neither a duty to defend Aguilar nor a duty to indemnify him for any claims asserted by Torres and Patricia. State Farm relied on the following exclusion in its automobile policy insuring Aguilar: "We do not provide Liability Coverage for any person . . . [w]ho intentionally causes bodily injury or property damage."

State Farm and Aguilar[2] resolved the declaratory judgment action without a trial on the merits. Instead, they entered into an agreed judgment that provided as follows:

**JUDGMENT**

ON THIS, the 21 day of October, 2014, came on to be heard the above entitled and numbered cause, and Plaintiff, State Farm Mutual Automobile Insurance Company of Texas, by and through its attorney of record, and Defendant, Edward Aguilar, appeared by and through his attorney of record; and the parties announced to the Court that all matters and things in controversy between such parties have been compromised and settled insofar as the case styled Cause No. 49216;

---

[2]Aguilar was represented in the declaratory judgment action by an attorney that also represented Torres at trial in this *Stowers* action.

3

Joe Prado Torres and Patricia M. Aguilar v. Edward Aguilar; In the 118th District Court in and for Howard County, Texas.

IT IS ORDERED, ADJUDGED AND DECREED by the Court that there is no coverage for the claims of Patricia Aguilar against Edward Aguilar in Cause No. 49216[3];

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that State Farm Mutual Automobile Insurance Company will provide coverage for the claims made by Joe Torres in Cause No. 49216 in accordance with the coverages and monetary limits provided;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that State Farm Mutual Automobile Insurance Company owes no duty to defend or indemnify Edward Aguilar in Cause No. 49216 from injuries claimed or sustained on July 7 and 8, 2012, by Patricia Aguilar, and that there is no coverage for Edward Aguilar under the then existing State Farm policy for Patricia Aguilar's claims.

The agreed judgment was signed by the trial court. Aguilar's attorney signed the judgment under a heading entitled "**APPROVED AS TO FORM AND CONTENT**." State Farm's attorney signed the judgment under a heading entitled "**APPROVED AS TO FORM ONLY**."

Patricia subsequently nonsuited her claims against Aguilar in the negligence lawsuit. Torres's claims against Aguilar in the negligence lawsuit proceeded to trial. Aguilar was defended in the negligence lawsuit with counsel provided by State Farm. The jury returned a verdict against Aguilar in favor of Torres for over $1.7 million. State Farm subsequently tendered a $30,000 payment to Torres based on Aguilar's automobile policy with State Farm. However, Torres rejected the $30,000 payment.

Aguilar assigned all of his causes of action against State Farm to Torres. Torres then filed the underlying *Stowers* action against State Farm. Torres also

---

[3]Cause No. 49216 is the negligence lawsuit described above.

4

asserted claims for bad faith, violations of the Texas Insurance Code, negligence, and gross negligence.

State Farm interpleaded the $30,000 Auto Policy limit into the registry of the court. State Farm also filed a motion for summary judgment, arguing that the agreed judgment in the declaratory action precluded Torres's *Stowers* claim. State Farm also sought dismissal of Torres's other claims. The trial court denied State Farm's motion for summary judgment on Torres's *Stowers* claim, finding that the issue of coverage was for the jury to decide. However, the trial court granted State Farm's motion for summary judgment on Torres's other claims.

The trial court bifurcated the *Stowers* trial, finding that the first phase of trial should solely determine the question of coverage for Aguilar's conduct under the "intentional injury" exclusion of the State Farm policy. Therefore, the trial court only submitted one question to the jury: "Do you find from a preponderance of the evidence that Edward Aguilar intentionally caused injury to Joe Torres?" Based upon the jury's affirmative finding, the trial court entered a take-nothing judgment on Torres's *Stowers* claim. Torres subsequently filed a motion to disregard the jury's verdict and a motion for a new trial. The trial court denied both motions. Torres then filed this appeal.

*Analysis*

A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 395 (Tex. 2016); *see G.A. Stowers Furniture*, 15 S.W.2d at 547.

> To prove a *Stowers* claim, the insured must establish that (1) the claim is within the scope of coverage; (2) a demand was made that was within policy limits; and (3) the demand was such that an ordinary, prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment.

*Seger*, 503 S.W.3d at 395–96 (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)). This appeal concerns the first element—was Torres's claim within the scope of coverage of State Farm's policy? "[A]n insurer has no duty to settle a claim that is not covered under its policy." *Garcia*, 876 S.W.2d at 848.

In his first issue, Torres asserts that the trial court erred by denying his request to disregard the jury's verdict. Torres contends that collateral estoppel bars relitigating the issue of coverage because the agreed judgment in the declaratory judgment action conclusively established coverage for Aguilar for the claims made by Torres. We disagree.

We review a trial court's denial of a motion to disregard jury findings as a legal sufficiency challenge. *Davis v. Nat'l Lloyds Ins.*, 484 S.W.3d 459, 467 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The "trial court may disregard a jury finding only if it is unsupported by evidence . . . or if the issue is immaterial." *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). Torres asserts that the issue submitted to the jury was immaterial because it was resolved against State Farm in the declaratory judgment action. "A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings." *Id.*

Collateral estoppel, or issue preclusion, bars the relitigation of an issue of fact or law that was actually litigated, was determined by a valid and final judgment, and was essential to the judgment. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). Collateral estoppel applies when the parties in the prior action were adversaries and the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Petta*, 44 S.W.3d at 579; *Eagle*

6

*Props.*, 807 S.W.2d at 721. Because collateral estoppel is an affirmative defense, Torres had the burden of proving its applicability. *See Bridgestone Lakes Cmty. Improvement Ass'n v. Bridgestone Lakes Dev. Co.*, 489 S.W.3d 118, 127 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Collateral estoppel may apply to an agreed judgment because "an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding." *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979). However, because collateral estoppel is only available in a subsequent action where there has been full and fair litigation in the previous suit of the same factual issues, a final judgment agreed to by the parties serves as an estoppel only as to those facts actually and necessarily decided. *Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 223 (Tex. App.—El Paso 1991, writ denied).

Torres's claim of collateral estoppel requires an analysis of the agreed judgment from the declaratory judgment action. "An agreed judgment should be construed in the same manner as a contract." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). The interpretation of an unambiguous consent judgment, like the interpretation of an unambiguous contract, is a matter of law for the court. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Id.*

The relevant portion of the agreed judgment between State Farm and Aguilar states that "State Farm Mutual Automobile Insurance Company will provide coverage for the claims made by Joe Torres [in the negligence lawsuit] in accordance with the coverages and monetary limits provided." Torres asserts that this language

7

bars the trial court from relitigating the issue of coverage because the phrase "will provide coverage" conclusively establishes that State Farm agreed to cover Torres under Aguilar's Auto Policy.

A Texas liability insurance policy imposes two distinct duties: the duty to defend and the duty to indemnify. *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997). An insurer's duty to defend its insured is distinct and separate from its duty to indemnify. *Griffin*, 955 S.W.2d at 82 (citing *Cowan*, 945 S.W.2d at 821–22)). Generally, the duty to defend is determined by comparing the facts alleged in the underlying lawsuit with the policy terms without regard to the truth or falsity of the allegations. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) ("Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." (citing *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973))). Conversely, the duty to indemnify is controlled by the "facts actually established in the underlying suit." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) (quoting *GuideOne*, 197 S.W.3d at 310); *accord Cowan*, 945 S.W.2d at 821; *see D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) ("The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy."). Thus, an insurer may have a duty to defend but no duty to indemnify. *Griffin*, 955 S.W.2d at 82.

Torres relies on the agreed judgment's use of the word "coverage" to support his claim of collateral estoppel. "Coverage" can mean one of three things: the duty to defend, the duty to indemnify, or both. *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 768 (Tex. App.—Fort Worth 2006, pet. denied). Here, the agreed

8

judgment states that State Farm will provide coverage for Torres, but that statement is limited by the words "in accordance with the coverages and monetary limits provided." By its reference to the monetary limits, the provision does not bind State Farm to pay any sums in excess of the policy limit of $30,000, which would be the case if Torres's claim of collateral estoppel were correct. Furthermore, the provision limits State Farm's obligations by the "coverages . . . provided," which indicates that the question of State Farm's duty to indemnify Aguilar remained to be decided.

The provisions of the agreed judgment pertaining to Patricia's claims support our interpretation of the agreed judgment. The agreed judgment provides that State Farm has no duty to defend or indemnify Aguilar for Patricia's claims, thereby conclusively addressing State Farm's liability for her claims. Conversely, the provision addressing Torres's claims indicates that State Farm's liability for his claims will be in accordance with the State Farm policy.

There is no dispute that State Farm's policy contained an exclusion from coverage if Aguilar acted intentionally. The question of whether Aguilar acted intentionally was not decided by the agreed judgment in the declaratory judgment action. Thus, the agreed judgment did not serve as an estoppel to a later determination of coverage based upon the intentional injury exclusion. Accordingly, the trial court did not err by overruling Torres's motion to disregard the jury's finding that Aguilar intentionally injured Torres. We overrule Torres's first issue.

In his second issue, Torres contends that the trial court committed reversible error by submitting a defective instruction as to what constitutes an intentional injury. He asserts on appeal that the instruction was defective under *Tanner v. Nationwide Mutual Fire Insurance Co.* because it permitted the jury to find intentional injury based on voluntary and intentional acts rather than on a deliberate, intentional injury. *See* 289 S.W.3d 828, 831 (Tex. 2009). However, Torres did not preserve this complaint for appellate review.

9

The Texas Rules of Procedure establish the preservation requirements to raise a jury-charge complaint on appeal. *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014). The complaining party must object before the trial court and "must point out distinctly the objectionable matter and the grounds of the objection." *Id.* (quoting TEX. R. CIV. P. 274); *see* TEX. R. APP. P. 33.1(a). Under Rule 274 of the Texas Rules of Civil Procedure, "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. "As a general rule, preservation requires (1) a timely objection 'stating the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context,' and (2) a ruling." *Burbage*, 447 S.W.3d at 256 (quoting TEX. R. APP. P. 33.1). Ultimately, the test asks "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

The question submitted by the trial court provided as follows:

**<u>JURY QUESTION NO. 1</u>**:

Do you find from a preponderance of the evidence that Edward Aguilar intentionally caused injury to Joe Torres?

You are instructed that a person intentionally causes injury to another if the acts of that person were voluntary and intentional, and the injury was the natural result of the act.

You are instructed that intoxication neither excuses nor creates intent to cause injury. A person's acts are not rendered involuntary or unintentional because of intoxication.

When making a determination of whether Edward Aguilar acted intentionally, it is only necessary that Edward Aguilar intended to injure

some person by his act. It is not essential that the injury be to the one intended.

Answer "Yes" or "No":

Answer: _____

Torres asserts on appeal that the second paragraph is erroneous under *Tanner*. At the charge conference, Torres objected as follows:

> We have one objection, Your Honor, to the . . . second paragraph of the Jury Question No. 1. And that is where the Court defines "intentionally causes injury."
>
> Our objection is based on the Tanner versus Nationwide opinion and several other Texas Supreme Court cases that have held that a term is given its plain and ordinary meaning unless it is specifically defined otherwise in the policy.
>
> The term "intentional" or "intentionally" is not a defined term in the State Farm policy that's the basis of this lawsuit. And so, therefore, we object to any additional definition that the Court is providing for the term "intentional" or "intentionally."

The trial court overruled that objection.

While Torres cited *Tanner* in making his objection to the charge, he did not object on the basis that the instruction in the second paragraph was erroneous under *Tanner*. Instead, his objection was that the term "intentionally" should not be defined in any manner. Torres did not preserve the complaint that he asserts on appeal because he did not point out the alleged error in the instruction so that the trial court had an opportunity to review the contention he now presents.

Moreover, we conclude that the trial court's instruction was not erroneous when viewed in its entirety. "We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). The test for abuse of discretion is whether the trial court acted in an

arbitrary and unreasonable manner or whether it acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The first paragraph of the instruction presented the "call" of the issue: Did Aguilar "intentionally cause[] injury" to Torres? There is no question that this part of the instruction complied with *Tanner*'s mandate that the focus is on the resulting injury, not to actions that led to it. *Tanner*, 289 S.W.3d at 831 (the exclusion precludes coverage "when the resulting *injury* was intentional, not merely when the insured's *conduct* was intentional"). The remaining paragraphs addressed the fact that Aguilar's intoxication did not preclude a finding that he deliberately injured Torres[4] or that his intent to cause injury to Patricia would be sufficient for the intentional injury exclusion to apply. We overrule Torres's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


September 30, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[5]

Willson, J., not participating.

---

[4]*See Bishop v. USAA Tex. Lloyd's Co.*, No. 09-14-00445-CV, 2016 WL 423564, at *2 (Tex. App.—Beaumont Feb. 4, 2016, no pet.) (mem. op.) (The intent to commit an assault is not negated by any voluntary consumption of alcohol.).

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.